Filed 3/26/21  P. v. Carreles CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RUBEN JESSE CARRELES,<br><br>    Defendant and Appellant. | F077989<br><br>(Super. Ct. No. PCF339731A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Tulare County.  Antonio A. Reyes, Judge.

Robert Navarro, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Jessica C. Leal, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

# INTRODUCTION

During a traffic stop, defendant Ruben Jesse Carreles ran from the vehicle and then fired a shot at the pursuing police officer, striking him. Defendant was convicted by jury of the attempted premeditated murder of a peace officer (Pen. Code, §§ 664/187, subd. (a), 189, subd. (a); count 1),[1] assault with a firearm on a peace officer (§ 245, subd. (d)(1); count 2), possession of a firearm by a felon (§ 29800, subd. (a)(1); count 3), and unlawful possession of ammunition (§ 30305, subd. (a)(1); count 4). In addition to its findings that the attempted murder was willful, deliberate, and premeditated and committed on a peace officer (§ 664, subds. (a), (e)), the jury found true the firearm enhancement allegations attached to the attempted murder and assault counts (§ 12022.53, subds. (b)–(d)). In a bifurcated proceeding, the trial court found that defendant served a prior prison term (§ 667.5, former subd. (b)).[2]

The trial court sentenced defendant to 15 years to life for attempted murder and imposed additional consecutive terms of 25 years to life for the firearm enhancement under section 12022.53, subdivision (d), and one year for the prior prison term enhancement pursuant to section 667.5, former subdivision (b), for a total term of 41 years to life.[3] Sentences on counts 2 through 4 were imposed and stayed under section 654.[4] In addition, the trial court imposed the maximum restitution fine of

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

[2] As addressed in part IV. of the Discussion, section 667.5, subdivision (b), was amended effective January 1, 2020, to limit the convictions upon which a prior prison term enhancement may be based. (Stats. 2019, ch. 590, § 1, pp. 1–4 (Senate Bill No. 136).)

[3] Defendant was also sentenced in Tulare Superior Court case No. PCF278405 following the trial court's finding that he violated his probation. We do not summarize those proceedings, which are not relevant to this appeal.

[4] The trial court imposed the one-year prior prison term enhancement on counts 1, 2, and 3, and the minute order reflects in error that it was imposed on all four counts. A prior prison term enhancement is "to be applied once to the indeterminate sentence and once to the determinate sentence, unless the court elects to strike the conviction under section 1385." (*People v. Minifie* (2018) 22 Cal.App.5th 1256, 1265, fn. omitted.) Thus, as to one of the determinate counts, it

$10,000 under section 1202.4, subdivision (b)(1); a parole revocation restitution fine of $10,000 under section 1202.45, subdivision (a), suspended; a court operations assessment of $160 under section 1465.8; and a court facilities assessment of $120 under Government Code section 70373.

On appeal, defendant claims the jury's premeditation finding is not supported by substantial evidence. He also claims the trial court abused its discretion when it declined to strike the section 12022.53, subdivision (d), firearm enhancement and, alternatively, remand is required under *People v. Morrison* (2019) 34 Cal.App.5th 217 (*Morrison*) to allow the court to consider imposing one of the lesser firearm enhancements; under *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), he is entitled to remand for an ability-to-pay hearing on the fines and court assessments imposed; and under Senate Bill No. 136, he is entitled to have the prior prison term enhancement stricken and remand for resentencing.[5]

The People concede defendant is entitled to relief from the prior prison term enhancement under Senate Bill No. 136, but they disagree that remand for resentencing on that issue is required and they dispute defendant's entitlement to any relief on his other claims.

We reject defendant's substantial evidence claim and his challenges to the firearm enhancement, and we conclude that by failing to exercise his statutory right to object to the $10,000 restitution fine, he forfeited his *Dueñas* claim in its entirety. (§ 1202.4, subd. (d).) We agree with the parties that the prior prison term enhancement must be stricken in light of Senate Bill No. 136, but remand for resentencing is unnecessary.

---

appears the court erred when it imposed the enhancement. Any error in the imposition of the enhancement is moot, however, as is the clerical error in the minute order, given defendant's entitlement to relief from the enhancement under Senate Bill No. 136.

[5]     As discussed *post*, this court declined to follow *Morrison* in *People v. Tirado* (2019) 38 Cal.App.5th 637, 644, review granted Nov. 13, 2019, S257658 (*Tirado*).

Therefore, we strike the prior prison term enhancement, which reduces defendant's sentence on count 1 from 41 years to life in prison to 40 years to life in prison. Except as modified, the judgment is affirmed.

## FACTUAL SUMMARY

### I.     Prosecution Case

#### A.     Officer Perez

Around 11:15 p.m. on August 18, 2016, Porterville Police Officers Perez and Duran were on patrol when Perez, who was a newer officer at the time, saw a car pass by without a working rear license plate light. Perez activated his marked patrol vehicle's overhead lights, pulled behind the car, and notified the dispatcher of the stop. The car slowed but kept going, and Perez then activated the red and blue emergency lights. He thought the driver might be planning to pull over on Olive Avenue, so he was not concerned.

As the car turned onto Olive, the passenger door opened and a man, later identified as defendant, jumped out and ran. The car then came to rest along the curb. Officers Perez and Duran exited their patrol vehicle, and Perez pursued defendant on foot while Duran stayed with the driver, who was defendant's girlfriend.

Defendant ran across the street with Perez chasing behind. Perez did not see anything in defendant's hands, which were visible to him, and he did not have anything in his own hands; his taser and firearm were holstered. Perez announced himself as a police officer and warned defendant he would get tasered if he did not stop.

Defendant looked back at Perez twice from approximately 10 feet away and appeared surprised. Defendant then turned and from a "shooting stance" or a "[l]ow-ready stance," he pointed a gun at Perez. Perez saw a muzzle flash and as he turned to avoid getting shot in the face, he felt a hit to his right buttock. Perez unholstered his firearm and shot at defendant several times.

4.

Officer Duran ran toward Perez, who emptied his 15-round magazine at defendant. Duran also fired several shots at defendant, and Perez recalled dropping behind Duran to reload his firearm. When he looked up again, defendant was lying on the ground with his firearm approximately six inches away. Perez took cover and saw defendant reaching for his firearm. Approximately four times, Perez commanded defendant to stop or he would be shot, Perez then fired at defendant several more times as defendant kept reaching for the firearm. Defendant ceased reaching for his firearm at that point, and Perez informed Duran he was shot and needed to get help.

Perez radioed for help and he testified that by then, he had forgotten about the female driver, possibly due to his shock and extreme pain. As he walked toward the patrol vehicle, he saw the driver running toward him and, unsure if she was armed, he aimed his firearm at her and ordered her to stop multiple times. She finally dropped to the ground about five feet from him.

Backup then arrived and Perez was taken to the hospital by ambulance. He was shot one time through his right buttock and the bullet exited his inner thigh. His wound was treated with stitches and he was off duty for four or five weeks.

### B. Officer Duran

Officer Duran testified that after Officer Perez began chasing defendant and he stayed with the driver, he heard two distinct gunshots. He took cover and heard additional gunshots. He saw Perez and defendant facing each other approximately 15 yards apart, both in "postured stance[s]" with their hands on their firearms. Duran aimed at defendant and fired one shot. Perez and defendant then entered a parking lot and Duran lost sight of defendant behind a bush.

Duran ran to assist Perez and when he could see both again, defendant was still in a postured stance with his gun in his hands. Duran heard multiple shots and fired his gun again. Defendant then fell on the ground, face down. Perez approached and told Duran he had been shot in the leg. The two took cover and Perez reloaded. Perez then moved

5.

to take cover behind a shipping container and Duran took cover behind a dumpster. They ordered defendant to show his hands and Perez shot defendant again when defendant lifted his left arm to point his gun at them.

Duran testified that defendant yelled, "'Please stop, please stop.'" They told him to show his hands and he attempted to do so, but was unable. His firearm was on the ground within arm's reach.

Duran heard someone say, "'I want to see my babe. I want to see my babe.'" He turned and saw the driver walking toward them. She finally got down on the ground after repeated commands to do so.

Duran testified that Perez broke his cover. Although he told Perez to stay where he was and that he would cover the driver, Perez kept moving forward. Duran thought Perez was going to cover the driver, so he focused on defendant. Duran then heard the driver say, "'I want to see my babe'" two more times. Duran saw the driver was standing again and he did not see Perez, so he commanded the driver to get down again. After several commands, she complied, and Duran kept his focus on both the driver and defendant.

Once backup arrived, defendant was handcuffed, and Duran was able to check on Perez.

### C.     Other Evidence

One of the responding officers testified that when defendant was detained, he was "[r]oughly" 10 feet away from his firearm, which was a revolver. The revolver held five rounds, four live and one spent.

Investigators determined that the officers fired 29 shots, although only 27 shell casings were recovered.

## II.     Defense Case

Defendant testified that he was not aware there was a gun in the car until his girlfriend told him that the police were behind them and she had a gun. Neither of them

was supposed to have a gun, and she asked him to take it and run so she would not get caught with it. Defendant testified he put the gun in one pocket and her bag of ammunition in another pocket. He then jumped from the car and ran.

Defendant saw an officer was gaining on him. He wanted to get rid of the gun, so he reached into his pocket and as he turned to toss the gun, it discharged. Officer Perez then fired at him, and he was "trying to dip and dodge," and put the gun down. Perez kept firing and defendant was hit, or possibly tripped, and went to the ground on his stomach. Defendant testified he was calling out for them to stop and for help, and he was telling officers that he did not have a gun. Defendant heard his girlfriend calling "'babe'" and he saw her running toward him. He was yelling that he surrendered and to stop shooting him, but he could feel rounds hitting him. He testified he was shot at least five times and right before he was handcuffed, he said, "'I'm sorry, I don't know—I don't know what's going on.'"

Defendant testified he was surprised when the gun discharged. He denied he was trying to fire the gun or that he intended to kill Perez.

On cross-examination, defendant conceded that he and his girlfriend each had three felony convictions, and that they were codefendants in one of the cases. He also conceded that he had a gun in his hand, but explained he was trying to avoid getting shot and was not thinking about the gun he was holding. He said it all happened so fast and he was in shock, and, even after reviewing the police report, he stated he did not recall telling a police officer that he shot Perez because he was afraid.

## III. Rebuttal

Sergeant Clower, whose family owns a gun shop and who has decades of experience with firearms, explained that "pounds of pressure is how many pounds of pressure on the trigger it takes to make the mechanism on the gun work to bring the hammer back and fire the weapon." He was familiar with defendant's gun, a Charter

.357 magnum, and testified that "[t]here is no way that that gun could fire without the trigger being pulled."

Officer Stoker testified that after defendant was taken into custody, Stoker asked why defendant shot an officer. Defendant responded that he was scared, and he did not state that it was an accident or that he did not mean to do it. Stoker also estimated defendant's gun was approximately five feet away from him when he was taken into custody.

## DISCUSSION

### I. Substantial Evidence Challenge to Premeditation Finding

#### A. Standard of Review

"The Due Process Clause of the Fourteenth Amendment denies States the power to deprive the accused of liberty unless the prosecution proves beyond a reasonable doubt every element of the charged offense[]" (*Carella v. California* (1989) 491 U.S. 263, 265, citing *In re Winship* (1970) 397 U.S. 358, 364), and the verdict must be supported by substantial evidence (*People v. Zamudio* (2008) 43 Cal.4th 327, 357). On appeal, the relevant inquiry governing a challenge to the sufficiency of the evidence "'is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1055.) "The record must disclose substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Zamudio*, *supra*, at p. 357.)

"In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence." (*People v. Zamudio*, *supra*, 43 Cal.4th at p. 357.) "'[I]t is the jury, not the appellate court which must be convinced of the defendant's guilt ....'" (*People v. Nguyen*, *supra*, 61 Cal.4th at pp. 1055–1056.) "A

8.

reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support"' the jury's verdict." (*People v. Zamudio*, *supra*, at p. 357.)

### B. Elements of Attempted Premeditated Murder

"An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." (§ 21a.) While murder is an unlawful killing with express or implied malice aforethought (§§ 187, subd. (a), 188; accord, *People v. Rangel* (2016) 62 Cal.4th 1192, 1220), attempted murder requires specific intent to kill, or express malice, "'and the commission of a direct but ineffectual act toward accomplishing the intended killing'" (*People v. Smith* (2005) 37 Cal.4th 733, 739; accord, *People v. Gonzalez* (2012) 54 Cal.4th 643, 653–654).[6] Express malice is shown when the defendant "'either desires the victim's death, or knows to a substantial certainty that the victim's death will occur.'" (*People v. Houston* (2012) 54 Cal.4th 1186, 1217; accord, *People v. Covarrubias* (2016) 1 Cal.5th 838, 890.)

"For an attempt, the overt act must go beyond mere preparation and show that the killer is putting his or her plan into action; it need not be the last proximate or ultimate step toward commission of the crime or crimes [citation], nor need it satisfy any element of the crime [citation]." (*People v. Superior Court* (*Decker*) (2007) 41 Cal.4th 1, 8; accord, *People v. Garton* (2018) 4 Cal.5th 485, 514.) "[E]vidence of motive is often probative of intent to kill[,]" but it "is not required to establish intent to kill[.]" (*People v. Smith*, *supra*, 37 Cal.4th at p. 741.) Intent "may in many cases be inferred from the defendant's acts and the circumstances of the crime." (*Ibid.*)

Unlike murder, "attempted murder is not divided into degrees, but the sentence can be enhanced if the attempt to kill was committed with premeditation and

---

[6] Section 188 was amended effective January 1, 2019, but that amendment is not relevant to the issues raised in this appeal. (Stats. 2018, ch. 1015, § 2, p. 3.)

deliberation." (*People v. Gonzalez, supra*, 54 Cal.4th at p. 654.)  More than a specific intent to kill is required to support a finding of deliberation and premeditation.  (*People v. Koontz* (2002) 27 Cal.4th 1041, 1080.)  "'Deliberation' refers to careful weighing of considerations in forming a course of action; 'premeditation' means thought over in advance."  (*Ibid.*)  "'The process of premeditation and deliberation does not require any extended period of time.  "The true test is not the duration of time as much as it is the extent of the reflection.  Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly.…"  [Citations.]'"  (*Ibid.*)

"In *People v. Anderson* (1968) 70 Cal.2d 15, 26–27 [(*Anderson*)], [the Supreme] [C]ourt reviewed earlier decisions and developed guidelines to aid reviewing courts in assessing the sufficiency of evidence to sustain findings of premeditation and deliberation.  [Citation.]  [The court] described three categories of evidence recurring in those cases:  planning, motive, and manner of killing."  (*People v. Halvorsen* (2007) 42 Cal.4th 379, 419–420.)  "[H]owever, '[u]nreflective reliance on *Anderson* for a definition of premeditation is inappropriate.'"  (*People v. Koontz, supra*, 27 Cal.4th at p. 1081; accord, *People v. Casares* (2016) 62 Cal.4th 808, 824, disapproved on another ground by *People v. Dalton* (2019) 7 Cal.5th 166, 214.)  The California Supreme Court recently reiterated, "In the years since *Anderson*, '"we have emphasized that its guidelines are descriptive and neither normative nor exhaustive, and … reviewing courts need not accord them any particular weight."'  [Citation.]  *Anderson* provides 'a framework to aid in appellate review,' but it does not 'define the elements of first degree murder or alter the substantive law of murder in any way.'"  (*People v. Morales* (2020) 10 Cal.5th 76, 89, citing *People v. Rivera* (2019) 7 Cal.5th 306, 324 & quoting *People v. Perez* (1992) 2 Cal.4th 1117, 1125; accord, *People v. Casares, supra*, at p. 824; *People v. Halvorsen, supra*, at p. 420.)

### C.    Analysis

Defendant does not challenge his conviction for the attempted murder of a peace officer, but he argues that the evidence is insufficient to support the jury's finding that the attempted murder was willful, deliberate and premeditated.  For support, he relies on the Court of Appeal's decision in *People v. Boatman* (2013) 221 Cal.App.4th 1253 (*Boatman*) and the asserted absence of evidence supporting the *Anderson* factors.  We are unpersuaded, as the facts in this case are distinguishable from those in *Boatman*, and the California Supreme has repeatedly cautioned against "'[u]nreflective reliance on *Anderson* ....'"  (*People v. Koontz*, *supra*, 27 Cal.4th at p. 1081.)

In *Boatman*, the defendant shot and killed his girlfriend, but claimed it was accidental.  (*Boatman*, *supra*, 221 Cal.App.4th at p. 1257.)  The Court of Appeal concluded the evidence was insufficient to support the jury's finding of premeditation and deliberation, and it reduced the defendant's murder conviction from first degree to second degree.  (*Ibid.*)

There was evidence that the defendant and his girlfriend, who were in a bedroom when the shooting occurred, argued prior to the shooting.  (*Boatman*, *supra*, 221 Cal.App.4th at p. 1258.)  Afterward, defendant was "horrified and distraught ...."  (*Id.* at p. 1267.)  He could be heard in the background of the 911 call crying and repeating, "'[n]oooo,' '[b]aby,' and '[b]aby are you alive, baby'" (*id.* at p. 1261); he told responding police to call an ambulance (*id.* at p. 1258); and he cried during the trip to the police station, inquired about his girlfriend, and expressed that he could not lose her and would do anything for her (*id.* at p. 1259).

In reviewing the evidence, the court stated, "Although [the defendant's] statements regarding the shooting were inconsistent in significant respects, there is nothing in any of his statements to indicate that he considered shooting [her] beforehand or carefully weighed considerations for and against killing her."  (*Boatman*, *supra*, 221 Cal.App.4th at p. 1265.)  The court then considered the circumstantial evidence, finding, "[t]he

11.

present case lacks any planning evidence whatsoever," and "[t]here is little or no relevant motive evidence here." (*Id.* at p. 1267.) As to the manner of killing, the court acknowledged that the defendant shot his girlfriend in the face, but observed, "Even when manner of killing evidence is strong, cases in which findings of premeditation and deliberation are upheld typically involve planning and motive evidence as well." (*Id.* at p. 1268.)

Ultimately, the court held, "A first degree murder conviction premised upon premeditation and deliberation requires more than a showing of the intent to kill; it requires evidence from which reasonable jurors can infer that the killing is the result of the defendant's preexisting thought and reflection. [Citations.] Here, viewing the evidence in the entire record in the light most favorable to the prosecution, we conclude that there is ample evidence to support the jury's verdict of murder, but insufficient evidence to support the finding that [the] defendant killed [his girlfriend] with premeditation and deliberation. We will therefore reduce the conviction to second degree murder." (*Boatman*, *supra*, 221 Cal.App.4th at p. 1274.) Critical to the court's view of the evidence was its recognition that "[a]lthough the jury could refuse to believe [the defendant's] testimony, such disbelief cannot support an inference 'that [the] defendant did that which he denied doing.'" (*Id.* at p. 1267, quoting *People v. Velazquez* (2011) 201 Cal.App.4th 219, 231.)

In this case and in contrast with *Boatman*, the jury was apprised of how the shooting unfolded by virtue of the testimony of multiple witnesses. While there is no evidence the shooting was planned well in advance, there is evidence on the issues of motive and method. The events unfolded relatively rapidly, but, viewed in the light most favorable to the prosecution, defendant was fleeing police, demonstrating his motivation to escape. Initially, the gun was in his pocket, along with a bag of ammunition in another pocket. Defendant turned twice while running and, realizing Officer Perez was gaining

on him, he removed his gun from his pocket, adopted a shooting stance with both hands on the gun, aimed at Officer Perez, and pulled the trigger.

Although defendant only fired one of five rounds, the jury was not obligated to believe his testimony that the gun discharged accidentally as he was trying to throw it. Evidence of the shooting stance he adopted when he turned and then fired undermines this testimony. Moreover, there is no evidence that defendant threw his gun at *any* point, and Officer Stoker testified unequivocally that the revolver could not discharge unless the trigger was pulled due to the pounds of pressure required to fire it. There is also evidence that after defendant fell to the ground, he, at best, reached repeatedly for his gun or, at worst, raised it at officers; and both officers perceived that he presented a continuing threat. After the shooting, defendant did not express concern for Officer Perez, he did not state either that the shooting was an accident or that he did not mean to do it, and he did not otherwise express remorse. (Cf. *Boatman*, *supra*, 221 Cal.App.4th at p. 1267.) Instead, after he was shot and lying on the ground, defendant testified that he called out he surrendered, and he later offered a single explanation to police regarding why he shot Officer Perez: he was scared.

This evidence amply supports the jury's conclusion that the shooting "'""'occurred as the result of preexisting thought and reflection rather than unconsidered or rash impulse.'"'""' (*People v. Morales*, *supra*, 10 Cal.5th at p. 88; accord, *People v. Nelson* (2011) 51 Cal.4th 198, 213 [taking up firearm, climbing out of a moving car, sitting on window frame, reaching across roof, bracing, and aiming at victim sufficient to show intent to kill and premeditation]; *People v. Perez* (2010) 50 Cal.4th 222, 230 [shooting a single bullet at someone from close range that could have inflicted mortal wound supported findings of intent to kill and premeditation].) Accordingly, we reject defendant's contrary argument and affirm the jury's finding of willfulness, deliberation and premeditation.

13.

## II.    Firearm Enhancement

### A.    Background

As stated, the jury found the firearm enhancement allegations under section 12022.53, subdivisions (b)–(d), true, and the trial court imposed the greatest term of 25 years to life under subdivision (d) when it sentenced defendant on July 20, 2018. Pursuant to Senate Bill No. 620, effective January 1, 2018, section 12022.53, subdivision (h), was amended to provide that "[t]he court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section." (Stats. 2017, ch. 682, § 2, p. 3 (Senate Bill No. 620).)  Prior to this amendment, imposition of a firearm enhancement found true under section 12022.53 was mandatory and if more than one enhancement was found true, the court was required to impose the greatest term.  (§ 12022.53, subd. (f).)

Defendant advances two challenges to imposition of the firearm enhancement under section 12022.53, subdivision (d).  First, he claims the trial court abused its discretion when it imposed the enhancement of 25 years.  Second, relying on *Morrison*, he claims this matter must be remanded because the trial court was unaware of the scope of its discretion to impose a lesser firearm enhancement of either 10 years under subdivision (b) or 20 years under subdivision (c) of section 12022.53.  We reject both arguments.

### B.    Abuse of Discretion

Although defendant does not claim his sentence is unconstitutional or unauthorized, his assertion that the trial court abused its discretion in imposing the firearm enhancement under section 12022.53, subdivision (d), appears to draw in spirit from those legal principles.  Defendant argues first that in this case, "a life sentence with a mandatory 15 years constitutes substantial punishment that serves the penological interests of the state and interests of justice" while a sentence of "41 years to life does not."  Second, he cites to *People v. Young* (1983) 146 Cal.App.3d 729 and argues that the

14.

court "used the victim's law enforcement status as a factor to raise [his] sentence for the premeditated attempted murder of Officer Perez which had already been increased 'beyond the maximum otherwise prescribed' by subdivision (f) of section 664."

However, section 12022.53 has long been upheld against challenges on the ground of cruel or unusual punishment, and, as stated, defendant is not pursuing a constitutional claim. (*People v. Garcia* (2017) 7 Cal.App.5th 941, 951; *People v. Vallejo* (2013) 214 Cal.App.4th 1033, 1045; *People v. Zepeda* (2001) 87 Cal.App.4th 1183, 1215–1216.)[7] Nor can he claim, as he acknowledges, that in imposing the mandatory indeterminate term and the sentence enhancement, the trial court impermissibly relied on "a dual use of facts, prohibited by section 1170, subdivision (b)," which applies to *determinate* sentencing. (*People v. Young*, *supra*, 146 Cal.App.3d at p. 734; see *People v. Moberly* (2009) 176 Cal.App.4th 1191, 1197–1198 [discussing limited circumstances in which dual use of facts is prohibited in determinate sentencing].)[8]

Section 12022.53 provides for "escalating additional and consecutive penalties, beyond that imposed for the substantive crime, for use of a firearm in the commission of specified felonies" (*People v. Gonzalez* (2008) 43 Cal.4th 1118, 1124), subject to the trial

---

[7]    This case does not involve any of the special considerations that may attach to juvenile or young adult offenders; defendant was 29 years old at the time of the crime.

[8]    Subdivision (b) of section 1170, which applies to determinate sentencing, provides: "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court. At least four days prior to the time set for imposition of judgment, either party or the victim, or the family of the victim if the victim is deceased, may submit a statement in aggravation or mitigation. In determining the appropriate term, the court may consider the record in the case, the probation officer's report, other reports, including reports received pursuant to Section 1203.03, and statements in aggravation or mitigation submitted by the prosecution, the defendant, or the victim, or the family of the victim if the victim is deceased, and any further evidence introduced at the sentencing hearing. The court shall select the term which, in the court's discretion, best serves the interests of justice. The court shall set forth on the record the reasons for imposing the term selected and *the court may not impose an upper term by using the fact of any enhancement upon which sentence is imposed under any provision of law*. A term of imprisonment shall not be specified if imposition of sentence is suspended." (Italics added.)

court's ability to exercise its discretion to strike or dismiss the enhancement under section 1385 (§ 12022.53, subd. (h)). Section 1385 in turn permits the enhancement to be stricken or dismissed if the trial court determines it is "in furtherance of justice," and the reasons underlying the exercise of such discretion must be stated on the record. (§ 1385, subds. (a), (b).) At bottom, defendant disagrees with imposition of the enhancement, and his claim is founded on the proposition that because the trial court determined it was not in the furtherance of justice to strike the firearm enhancement and declined to exercise its discretion to do so, it abused its discretion. This inverts the applicable legal principles.

We review the trial court's sentencing decision for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) As the party challenging the sentence, defendant bears the burden of "'"'clearly show[ing] that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.'"'" (*People v. Carmony* (2004) 33 Cal.4th 367, 376–377, quoting *People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977–978; accord, *People v. Lee* (2017) 16 Cal.App.5th 861, 866.) Further, "a '"decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.'"'" (*People v. Carmony*, *supra*, at p. 377, quoting *People v. Superior Court* (*Alvarez*), *supra*, at p. 978.) "Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony*, *supra*, at p. 377.)

Defendant has no entitlement to relief from the firearm enhancement pursuant to sections 12022.53, subdivision (h), and 1385, subdivision (b), and he cites no legal authority and makes no legal argument to the contrary. Rather, his argument simply expresses disagreement with the decision. Defendant shot a police officer while trying to

escape from a traffic stop and, on this record, we can discern no viable basis for a claim that because the court declined to exercise discretion to strike the enhancement, it abused its discretion.

### C. Lack of Informed Discretion in Imposing Greatest Enhancement

Next, defendant claims that remand is required because the trial court was unaware of the scope of its discretion to select one of the two lesser firearm enhancements. We conclude the record does not support this view.

#### 1. Standard of Review

"'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.' [Citation.] In such circumstances, we have held that the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.'" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391; accord, *People v. Flores* (2020) 9 Cal.5th 371, 431–432; *People v. Yanaga* (2020) 58 Cal.App.5th 619, 625.) However, "we presume that a judgment or order of the trial court is correct, '"[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown."'" (*People v. Giordano* (2007) 42 Cal.4th 644, 666.) Furthermore, remand is not required when it would be an idle act. (*People v. Flores*, *supra*, at p. 432, citing *People v. McDaniels* (2018) 22 Cal.App.5th 420, 425; accord, *People v. Jefferson* (2019) 38 Cal.App.5th 399, 409; *People v. Allison* (2019) 39 Cal.App.5th 688, 705–706.)

#### 2. *Morrison* and *Tirado*

Defendant relies on the Court of Appeal's decision in *Morrison* for support. *Morrison* concerned the trial court's discretion to impose lesser enhancements under

section 12022.53 that had *not* been found true by the jury. (*Morrison*, *supra*, 34 Cal.App.5th at p. 220.) In *Morrison*, the jury convicted the defendant of first degree murder and found the firearm enhancement alleged under section 12022.53, subdivision (d), true. (*Morrison*, *supra*, at p. 220.) However, the prosecutor had dismissed the lesser enhancements alleged under section 12022.53, subdivisions (b) and (c), and those enhancements were not presented to the jury for consideration. (*Morrison*, *supra*, at p. 221.)

On appeal, the defendant claimed the trial court misunderstood the scope of its discretion to modify the enhancement to one of the "'lesser included enhancement[s]'" under the statute. (*Morrison*, *supra*, 34 Cal.App.5th at p. 221.) The appellate court concluded that because "the court may impose a 'lesser included' enhancement that was not charged in the information when a greater enhancement found true by the trier of fact is either legally inapplicable or unsupported by sufficient evidence," the trial court also has the discretion under section 1385 to strike the greater enhancement under subdivision (d) and impose a lesser enhancement under subdivision (b) or (c) of section 12022.53, notwithstanding that the jury did not make findings as to those enhancements. (*Morrison*, *supra*, at pp. 222–223.)

After briefing was complete in this case, this court, in an opinion authored by Justice Detjen, declined to follow *Morrison*'s lead with respect to the scope of the trial court's authority under section 1385 where the jury did not find a lesser enhancement true. (*Tirado*, *supra*, 38 Cal.App.5th at p. 644, review granted; accord, *People v. Delavega* (2021) 59 Cal.App.5th 1074, 1094; *People v. Valles* (2020) 49 Cal.App.5th 156, 167, review granted July 22, 2020, S262757; *People v. Garcia* (2020) 46 Cal.App.5th 786, 790–791, review granted June 10, 2020, S261772; *People v. Yanez* (2020) 44 Cal.App.5th 452, 457–458, review granted Apr. 22, 2020, S260819.) In *Tirado*, the prosecutor alleged, and the jury found true, a firearm enhancement under section 12022.53, subdivision (d). (*Tirado*, *supra*, at pp. 640–641, review granted.) As

18.

in *Morrison*, the defendant claimed on appeal that "the trial court committed an abuse of discretion because it was unaware that pursuant to sections 1385 and 12022.53, subdivision (h) it could have substituted the section 12022.53, subdivision (d) enhancement with a different enhancement within the same section." (*Tirado*, *supra*, at p. 641, review granted.)

This court interpreted section 12022.53, subdivision (h), and section 1385, and concluded that the Legislature did not "grant the trial court the power to modify or reduce a firearm enhancement .…" (*Tirado*, *supra*, 38 Cal.App.5th at p. 643, review granted.) *Tirado* noted its "conclusion is consistent with the well-settled principle that 'prosecuting authorities, exercising executive functions, ordinarily have the sole discretion to determine … what charges to bring,'" and "because the People exercised their charging discretion to allege only one enhancement, the trial court was limited to either imposing or striking that enhancement." (*Id.* at p. 644.) The court "recognize[d] the trial court has the authority to impose a ""'lesser included enhancement[]'"" following trial 'when the charged enhancement is either factually unsupported or inapplicable to the offense of conviction'" but "the enhancement at issue was neither unsupported by the law nor unsupported by the evidence." (*Ibid.*)

This case does not present the same issue as in *Morrison* and *Tirado* because the prosecutor charged three firearm enhancements under section 12022.53 and all three were found true by the jury. (*People v. Wang* (2020) 46 Cal.App.5th 1055, 1090.) Thus, the trial court could have exercised discretion to select one of the lesser enhancements, but it did not do so. (*Id.* at pp. 1090–1091; *Tirado*, *supra*, 38 Cal.App.5th at p. 644, review granted.) The question here is whether defendant has met his burden of showing the trial court was unaware of the scope of its sentencing discretion. We conclude he has not.

### 3. Record Indicates Trial Court Aware of Scope of Discretion

The trial court expressed awareness of its discretion to strike firearm enhancements pursuant to the amendment of section 12022.53, subdivision (h), effected

by Senate Bill No. 620.  Furthermore, after the trial court pronounced judgment, the prosecutor revisited the firearm enhancement for the purpose of clarification, as follows:

> "[PROSECUTOR]:  … I'd like to just make sure the record is really clear.  I have a concern about the way you worded it on choosing 'not to use my discretion.'  And just to make it clear, and I think it is by the fact that you did impose the 25-to-life, but that you are using your discretion and imposing—

> "THE COURT:  I acknowledge my right to use my discretion.  I indicated the reason why I did not use my discretion to strike the special allegation.  *I further noted that I used my discretion to impose the 25-to-life special allegation*."  (Italics added.)

"In the absence of evidence to the contrary, we presume that the court 'knows and applies the correct statutory and case law'" (*People v. Thomas* (2011) 52 Cal.4th 336, 361), and as stated, ""'error must be affirmatively shown'""" (*People v. Giordano*, *supra*, 42 Cal.4th at p. 666).  Here, the trial court's express statement indicates it understood the scope of its sentencing discretion as to the firearm enhancements found true by the jury.  Defendant advances no argument that persuades us otherwise on this record and, notwithstanding this court's contrary decision in *Tirado*, his reliance on *Morrison* is misplaced where, as here, the jury found all three section 12022.53 enhancements true.

## III.   *Dueñas* **Claim**

As previously set forth, the trial court imposed a maximum restitution fine of $10,000 under section 1202.4, subdivision (b)(1); a parole revocation restitution fine of $10,000 under section 1202.45, subdivision (a), suspended; a total court operations assessment of $160 under section 1465.8; and a total court facilities assessment of $120 under Government Code section 70373.  Defendant challenges the imposition of fines, fees and assessments without a determination on his ability to pay, in accordance with the postsentencing decision in *Dueñas*.  The People dispute defendant's entitlement to any relief under *Dueñas*.

20.

Defendant had a statutory right to object to the $10,000 restitution fine when it was imposed, based on inability to pay, but he did not do so. (§ 1202.4, subds. (c), (d).) Accordingly, we conclude defendant forfeited appellate review of his claim that the trial court erred in imposing the fines and court assessments without determining his ability to pay. (*People v. Montelongo* (2020) 55 Cal.App.5th 1016, 1033–1035; *People v. Taylor* (2019) 43 Cal.App.5th 390, 399–400; *People v. Gutierrez* (2019) 35 Cal.App.5th 1027, 1033; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153–1154.) We recognize that the imposition of court operations and facilities assessments under Penal Code section 1465.8 and Government Code section 70373 is statutorily mandated irrespective of ability to pay, but we agree with the Court of Appeal in *People v. Gutierrez* that "[a]s a practical matter, if [defendant] chose not to object to a $10,000 restitution fine based on an inability to pay, he surely would not complain on similar grounds regarding an additional $[280] in fees." (*People v. Gutierrez*, *supra*, at p. 1033; accord, *People v. Montelongo*, *supra*, at p. 1034.)

In *People v. Taylor*, the Court of Appeal applied the forfeiture doctrine where the defendant failed to object to the imposition of the maximum restitution fine, but declined to do so with respect to the court operations and facilities fees, reasoning that the defendant's failure to object to the restitution fine despite a statutory right to do so may have been based on reasons unrelated to his ability to pay. (*People v. Taylor*, *supra*, 43 Cal.5th at pp. 400–401; accord, *People v. Oliver* (2020) 54 Cal.App.5th 1084, 1100–1101.) We are unpersuaded on that point, however, and conclude that defendant forfeited his ability-to-pay claim under *Dueñas* in its entirety by failing to object to the $10,000 restitution fine.

## IV.    Senate Bill No. 136

Finally, pursuant to section 667.5, subdivision (a), and subject to an exception not relevant here, trial courts are required to impose a three-year sentence for each prior, separate prison term served by the defendant for a violent felony where the current

21.

offense is also a violent felony, as defined in subdivision (c) of the statute.  For other felonies, pursuant to former subdivision (b), and subject to exceptions not relevant here, trial courts are required to impose an additional one-year term for each prior, separate prison term or county jail felony term.  As amended by Senate Bill No. 136, subdivision (b) of section 667.5 limits imposition of the additional one-year term to each prior, separate prison term served for a conviction of a sexually violent offense as defined in Welfare and Institutions Code section 6600, subdivision (b).

We agree with the parties that Senate Bill No. 136 is retroactive under the rule articulated in *In re Estrada* (1965) 63 Cal.2d 740, 748 and that defendant's prior conviction under section 496, subdivision (a), for receiving stolen property is not a qualifying offense under section 667.5, subdivision (b), as amended.  Therefore, we order the one-year prior prison term enhancement stricken, which reduces defendant's sentence on count 1 from 41 years to life to 40 years to life.[9]

## DISPOSITION

The judgment is modified to reflect that the one-year prior prison term enhancement imposed under section 667.5, former subdivision (b), is stricken pursuant to Senate Bill No. 136.  The trial court shall issue an amended abstract of judgment and

---

[9]    As the People contend, remand for resentencing on this issue is not required given defendant's mandatory sentence of 15 years to life on count 1 pursuant to section 664, subdivision (f).  (*People v. Buycks* (2018) 5 Cal.5th 857, 896, fn. 15.)

forward a certified copy to the appropriate authorities.  The judgment is otherwise affirmed.

MEEHAN, J.

WE CONCUR:

POOCHIGIAN, Acting P.J.

DETJEN, J.